IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JUANITA GOWDY, | ) | Case No. 1:25-cv-0069 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS CLEVELAND | ) | **OPINION AND ORDER** |
| MEDICAL CENTER, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

I.  **Introduction**

This case involves a scuffle between Plaintiff, her adult daughter and the University Hospital Police on July 3, 2024, all of which was captured on video.  ECF Doc. 14.  Following the incident, Plaintiff and her daughter were prosecuted for minor misdemeanors.  A jury found her daughter guilty of resisting arrest and persistent disorderly conduct.  Plaintiff was acquitted of persistent disorderly conduct and obstruction of official business.

Following her acquittal, Plaintiff filed this lawsuit.  She has asserted the following claims against University Hospital, the UH Police officers, and the City of Cleveland:  1) retaliation, First Amendment and §1983 against UH Police defendants; 2) retaliatory arrest, First Amendment and §1983 against UH Police defendants; 3)  retaliatory prosecution, First Amendment and §1983 against UH Police defendants; 4) unlawful seizure against Defendant Huling; 5) a *Monell* claim against Cleveland, Kobak and Huling; 6) First Amendment violation,

retaliatory prosecution, *Monell* §1983 against the City of Cleveland; and 7) breach of contract against University Hospitals.  ECF Doc. 20-1.

On June 20, 2025, University Hospitals and its police officers filed a motion for judgment on the pleadings.  ECF Doc. 29.  The same day, the City of Cleveland also filed a motion for judgment on the pleadings.  ECF Doc. 30.  Plaintiff filed a brief in opposition on August 4, 2025 (ECF Doc. 32), and Defendants filed reply briefs on August 18, 2025.  ECF Docs. 33 and 34.  For the reasons explained below, Defendants' motions for judgment on the pleadings are GRANTED.

## II.    Statement of Facts

The UH Police Department operates pursuant to a Memorandum of Understanding/ Authorizing Agreement with the Cleveland Police Department and City of Cleveland.  ECF Doc. 20-1 at ¶19.  Defendants Huling, Gill, Sedivy and Tomm were serving as UH police officers on the night of July 3, 2024.  ECF Doc. 20-1 at 18.  Defendant James Koback is the Chief of Police of the UH Police Department.  ECF Doc. 20-1 at 29.

On July 3, 2024, Plaintiff Juanita Gowdy ("Plaintiff") and her daughter, Paris King, were standing outside the entrance to the UH Emergency Department where they observed the following encounter.  Around 2:21 a.m., the father of a gunshot victim wanted to enter the hospital.  A UH officer explained to him that the hospital was not permitting visitors at that time. Another officer explained to the father that he could enter the hospital if one of the family members already inside would come to the entrance to guide him back.  ECF Doc. 14.

Shortly after this encounter, Plaintiff and her daughter confronted the UH officers about their treatment of the father of the gunshot victim.  Plaintiff and King also demanded entrance into the hospital.  The Officers remained calm.  They determined that Plaintiff was a UH patient,

and she was permitted to enter the hospital.  However, they did not grant permission to Ms. King to enter the hospital.  Plaintiff and Ms. King held hands and tried to force Ms. King's way into the hospital, but the officers physically prevented Ms. King from entering.  Ms. King became extremely agitated – yelling and cursing at the officers.  She actively resisted their attempts to subdue her while they tried to arrest her.  During the scuffle, Officer Huling stepped in front of the hospital door, which prevented Plaintiff from re-exiting the hospital and joining in the scuffle with her daughter.  Plaintiff was never arrested or placed in handcuffs.  Officers only briefly prevented her from re-exiting the hospital through the door she had just entered.  *Id.*

Due to their conduct on July 3, 2024 toward the UH police officers, both Plaintiff and Ms. King were prosecuted for misdemeanor criminal offenses in Cleveland Municipal Court. *See City of Cleveland v. Juanita Gowdy,* case No. 2023-CRB-005250; and *City of Cleveland v. Paris King,* case No. 2023-CRB-005251.  Plaintiff was charged with obstruction of official business and persistent disorderly conduct.  The case proceeded to a jury trial.  At the close of evidence, Plaintiff's attorney moved for acquittal pursuant to Ohio Crim. R. 29, which the trial court denied.  ECF Doc. 10-1 at 441-446.  Plaintiff was acquitted of the charges.  Her daughter, however, was found guilty of both resisting arrest and persistent disorderly conduct.  ECF Doc. 10-1 at 551.

### III.    Procedural History

On August 8, 2024, Plaintiff and her daughter filed a complaint in this Court.  *Gowdy v. UH,* 1:24-cv-1355DAP; ECF Doc. 1. The Court scheduled a case management conference for November 20, 2024, but neither Plaintiff nor her daughter appeared.  By the time of the case management conference, Ms. King had already been found guilty of the charges resulting from

the July 3, 2024 incident.  See ECF Doc. 10-1.  Counsel for both sides briefly discussed the facts

of the case with the Court, and the Court dismissed the case without prejudice.  ECF Doc. 23.

On January 15, 2025, Plaintiff re-filed her complaint, but her daughter did not join the

lawsuit.[1]  ECF Doc. 1.  On April 23, 2025, the Court granted leave to Plaintiff to file an amended

complaint.  ECF Doc. 20-1.  Plaintiff has attempted to state claims against the University

Hospital Cleveland Medical Center ("UH"), its police officers (Huling, Tomm, Gill, Sedivy), the

UH Chief of Police (Kobak) and the City of Cleveland.  Id.

## IV.    Standard of Review

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c)

motion for judgment on the pleadings.  *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  A

12(b)(6) motion tests the sufficiency of the complaint.  *Gardner v. Quicken Loans, Inc.*, 567 F.

App'x. 362, 364 (6th Cir. 2014).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  Language merely parroting the statutory language will not suffice.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "All well-pleaded material allegations of the

pleadings of the opposing party must be taken as true."  *JPMorgan Chase Bank, N.A. v. Winget*,

510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks and citation omitted).

When reviewing a motion for judgment on the pleadings, courts generally may only

review the pleadings, any attachments to those pleadings, and documents that are "referred to in

---

[1] Most likely this was because the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994)
precluded her from suing the officers.

the complaint and [are] central to the plaintiff's claim" or are "matters of public record." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted); *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007); *see also* Fed. R. Civ. P. 10(c). In this case, Defendants urge the Court to consider the body-camera video recordings of the July 3, 2024 incident to contradict some of Plaintiff's allegations. The Sixth Circuit holds that courts may only consider the video footage when "the videos are clear and 'blatantly contradict[]' or 'utterly discredit[]' the plaintiff's version of events." *Id.* (alterations in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)); *see also Brown v. Giles*, 95 F.4th 436, 440-41 (6th Cir. 2024); *Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023). This is because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

## V.    Law & Analysis

Plaintiffs' claims appear to be intermingled with one another. Count 6, for example, purports to be a "Violation of First Amendment Right to Access Courts/Retaliatory Prosecution Custom, Policy and Practice § 1983 Monell" claim. The Court has attempted to simplify its analysis by grouping claims by topic rather than by the Counts listed in Plaintiff's Amended Complaint. Also because all of Plaintiff's claims are subject to dismissal, the Court has not attempted to distinguish the Defendant(s) to which each claim has been directed.

### A.    First Amendment/Retaliation Claims

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Nieves v. Bartlett,* 587 U.S. 391, 398 (2019), quoting *Hartman v. Moore*, 547 U. S. 250, 256, 126 S. Ct.

1695, 164 L. Ed. 2d 441 (2006).  If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim.  *Id.* (citing *Crawford-El v. Britton*, 523 U. S. 574, 593, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U. S. 274, 283-284, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)).

To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."  *Hartman*, 547 U. S., at 259, 126 S. Ct. 1695, 164 L. Ed. 2d 441.  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.  Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.  *Id.*, at 399, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").  In First Amendment retaliatory cases, plaintiffs "must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause."  *Nieves v. Bartlett*, 587 U.S. 391, 400-401 (2019).

### 1. Probable Cause

Here, Plaintiff claims Defendants retaliated against her for exercising her First Amendment rights after observing what she believed to be a civil rights violation by University Hospital police.  Plaintiff contends her brief detention and subsequent prosecution were retaliation for the exercise of her First Amendment rights.

Defendants argue this case is similar to *Nieves v. Bartlett,* 587 U.S. 391 (2019), in which the Supreme Court held that a plaintiff asserting a First Amendment retaliation claim must show that the violating officers lacked probable cause to arrest him.  The Court agrees that this case is like *Nieves,* which controls Plaintiff's First Amendment claims.

In *Nieves,* the plaintiff began yelling at police officers when they were questioning a minor at a winter sports festival.  During the confrontation, one of the police officers pushed the plaintiff away, and another officer arrested him.  Plaintiff asserted a First Amendment retaliation claim arguing the officers had a retaliatory animus in arresting him.  After the arrest, one of the officers stated, "bet you wish you would have talked to me now."  The Supreme Court held that regardless of the officers' animus, the showing of probable cause to arrest generally defeats a First Amendment retaliatory claim.[2]  The same is true here.

Plaintiff alleges that the UH police officers detained her and prosecuted her in retaliation for her protected speech.  ECF Doc. 20-1 at ¶¶64, 70.  She also alleges a lack of probable cause for the detention and prosecution.  ECF Doc. 20-1 at ¶¶ 65, 71.  Normally, her allegations would be enough to overcome dismissal at the Fed. R. 12 stage.  But in this case, the public record from Plaintiff's criminal case and the body-camera footage both render Plaintiff's allegation of "no probable cause" implausible.

As a result of the July 3, 2024 incident, Plaintiff was prosecuted in Cleveland Municipal Court for obstructing official business and persistent disorderly conduct.  Plaintiff moved to dismiss the charges at the end of trial pursuant to Criminal Rule 29, but the trial judge denied the motion to dismiss.  ECF Doc. 10-1 at 441-446.  Under Criminal Rule 29, the trial judge was

---

[2] The Supreme Court recognized a narrow exception would be warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.  *Nieves,* 587 U.S. at 407.  This narrow exception is not at play in this case.

required to determine whether the evidence was sufficient to sustain a conviction.  Here, the trial judge determined that there *was* sufficient evidence to convict Plaintiff beyond a reasonable doubt, which is a much higher standard than probable cause.

Probable cause is not a "high bar."  *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014).  It "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction" beyond a reasonable doubt. *Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *Illinois v. Gates*, 462 U.S. 213, 246, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (citation omitted).  If the UH officers had lacked probable cause for Plaintiff's prosecution, the prosecutor would not have had sufficient evidence to prove the charges beyond a reasonable doubt, and the charges would likely have been dismissed prior to jury deliberation.[3]  *See also, City of Cleveland v. Juanita Gowdy,* Cleveland Municipal Court docket, case No. 2023-CRB-005250.  The fact that the trial judge refused to dismiss the charges under Criminal Rule 29 suggests that defendants had probable cause to believe Plaintiff had obstructed their business and conducted herself in a disorderly manner.

More significantly, the body-camera footage of the July 3, 2024 incident shows that UH officers had probable cause to momentarily block Plaintiff from exiting the hospital, and that there was probable cause to charge her for obstructing official business and persistent disorderly conduct.  As noted above, if a video clearly depicts a set of facts contrary to those alleged in the

---

[3] The Court is mindful that the trial court was required to construe the evidence in favor of the prosecution, whereas this court is required to construe the allegations in Plaintiff's favor.  *See Rainey v. Patton,* 534 F. App'x 391, 398 (6th Cir. 2013).

complaint, this makes a plaintiff's allegations implausible.  *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).  Plaintiff alleges that there was no probable cause to block the exit or to charge her.  The video shows otherwise.

UH officers were attempting to enforce a soft lock-down of the hospital after a gun-shot victim was admitted.  Even the victim's own father was instructed to take extra steps to gain entrance to the hospital during the soft lock-down.  Considering the disruption caused by Plaintiff and her daughter, it was reasonable for the UH officers to believe they had probable cause to briefly prevent Plaintiff from exiting the hospital and that there was also probable cause to charge her with misdemeanor offenses for obstructing their duties.

The body-camera footage from July 3, 2024 is clear.  Plaintiff and her daughter were yelling and cursing at the UH officers while they attempted to enforce the hospital's lock-down. Plaintiff was permitted to enter the hospital after showing her hospital wristband, but her daughter was not a patient.  Plaintiff and Ms. King tried to force Ms. King's entrance despite denial by the officers.  A few moments later, Plaintiff was briefly blocked from exiting the hospital (from the vestibule where she had demanded entrance) to prevent interference with her daughter's lawful arrest.  Plaintiff's allegation of "no probable cause" lacks any factual support. Defendants are entitled to judgment on the pleadings on Plaintiff's First Amendment retaliation claims.  *See Nieves v. Bartlett,* 587 U.S. 391 (2019).

### 2. Qualified Immunity

Defendants also argue that qualified immunity poses an alternate bar to Plaintiff's First Amendment retaliation claims.  Qualified immunity shields officials from trial "unless their actions violate clearly established rights."  *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396

(1982)).  Overcoming the invocation of qualified immunity requires Plaintiff to show both that (1) UH police violated her constitutional rights, and (2) that "the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).  A court need resolve only one of the two inquiries in defendants' favor to grant judgment to defendants.  *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Here, there is no question that Plaintiff had a right to speak out against a perceived civil rights violation.  *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)).  But she did not have a clearly established constitutional right to interfere with the UH officers' enforcement of a soft lock down at the hospital or the lawful arrest of her daughter.  As already explained, this case is very similar to *Nieves v. Bartlett*, in which the Supreme Court held that a plaintiff must show a lack of probable cause for the officers' actions.  Here, Plaintiff cannot do that.  In fact, *Nieves v. Bartlett,* 587 U.S. 391 (2019) stands for the proposition that officers are constitutionally permitted to take reasonable steps to prevent someone from interfering with the performance of their duties.  Thus, even if the officers *had* lacked probable cause to believe that Plaintiff was obstructing official business or disorderly conducting herself, they would be entitled to qualified immunity from Plaintiff's retaliation claims.  There was no precedent establishing that their interaction with Plaintiff on July 3, 2024 violated any constitutional right.  Qualified immunity shields Defendants from Plaintiff's First Amendment retaliation claims.

### 3.  Independent Prosecution

Another problem with Plaintiff's retaliatory prosecution claim (Count 3) is that there is no evidence that the UH Defendants made the decision to prosecute Plaintiff.  Gowdy alleges

that UH Defendants conspired with the City of Cleveland's law department to charge Gowdy with disorderly conduct, trespassing, and obstruction of official business.  ECF Doc. 20-1 at ¶ 5. But she also alleges that prosecutors for the City of Cleveland filed the charges against her.  ECF Doc. 20-1 at ¶ 40.  Plaintiff hasn't alleged any operative facts supporting any conspiracy between the officers and the prosecutor.

The Court surmises that the reason Plaintiff has alleged a conspiracy is because she cannot allege that the UH officers violated any of her constitutional rights.  She doesn't allege she was arrested or even given a ticket or a summons on July 3, 2024 by the UH police officers. She alleges she was briefly blocked from exiting the hospital vestibule while officers arrested her daughter.  As is further explained below, even a brief detention during an arrest would not have violated any constitutional right.  *See United States v. Kinzalow,* 236 F. App'x 414, 418 (10th Cir. 2007) (citing *United States v. Maddox*, 388 F.3d 1356, 1362-63 (10th Cir. 2004).

To state a retaliatory prosecution claim against the officers, Plaintiff would need to allege that they "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause."  *Smith v. Cnty. of Wayne,* No. 21-12070, 2023 U.S. Dist. LEXIS 225807, 2023 WL 8788944, at *15 (E.D. Mich. Dec. 19, 2023) (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)).  Here, because the body camera video exists, Gowdy's vague allegations that the officers conspired with prosecutors is not enough.  The officers didn't need to conspire with anyone because the body-camera video established probable cause for Plaintiff's charges.  Prosecutors could independently review the video footage and decide for themselves whether Plaintiff should be charged, and of course, a prosecutor has immunity for a charging decision. *Ireland v. Tunis,* 113 F.3d 1435, 1446 (6th Cir.

1997).  Accordingly, Plaintiff has failed to allege sufficient facts to state a retaliatory prosecution claim against the UH Police Defendants.

### B. Unlawful Seizure

No unlawful seizure occurred in this case.  Plaintiff wasn't arrested, searched or seized.  She hasn't even alleged that the UH officers charged her with a crime on July 3, 2024.[4]  Plaintiff's Fourth Amendment unlawful seizure claim is based on Officer Huling temporarily preventing her from exiting the hospital while officers were lawfully arresting her daughter.  ECF Doc. 20-1 at ¶¶ 37, 76.  Even if Plaintiff's allegations are accepted as true, Officer Huling's standing in front of the hospital door did not violate Plaintiff's Fourth Amendment right to be free from unlawful seizure.  "Where an individual is in an area immediately adjoining [an] arrestee, the individual may be placed in temporary protective detention even in the absence of probable cause or a reasonable suspicion that the individual poses a threat to officer safety."  *United States v. Kinzalow*, 236 F. App'x 414, 418 (10th Cir. 2007) (citing *United States v. Maddox*, 388 F.3d 1356, 1362-63 (10th Cir. 2004).  Plaintiff alleges, and the video shows, that she was only very briefly prevented from exiting the hospital vestibule while her daughter was being arrested.[5]  No constitutional violation occurred.  The officers were permitted to prevent Plaintiff from interfering with her daughter's arrest or entering her daughter's altercation with the officers.  Defendants are entitled to dismissal of Plaintiff's Fourth Amendment claim.

### C. *Monell* Claims

Plaintiff alleges the UH Police and City of Cleveland "failed to adequately train, to implement corrected training, and/or to supervise the training and implementation of First

---

[4] Plaintiff alleges that City of Cleveland prosecutors later charged her with misdemeanors related to her conduct.  ECF Doc. 20-1 at ¶40.

[5] Plaintiff was never seized by officers.  The vestibule video shows her moving around freely inside the hospital during her daughter's arrest.  See ECF Doc. 14.

Amendment speech protections for the UH Police Department and knew or reasonably should have known this deficit would result in the violation of individuals' First Amendment rights by the UH Police Department's officers."  ECF Doc. 20-1 at ¶81.  To prevail on a § 1983 "*Monell*" claim against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id.*  Section 1983 liability does not attach to a municipality based on the actions of its employee tortfeasors under the doctrine of *respondeat superior*; instead, such liability may only be imposed on the basis of the municipality's own custom or policy.  *Monell*, 436 U.S. at 691.  "Under § 1983, local governments are responsible only for their own illegal acts" and may not be held vicariously liable for the actions of their employees.  *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)).

To bring a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).  Here, Plaintiff has failed to identify the violation of any constitutional right by any of the UH officers because the Supreme Court has never recognized a First Amendment right to be free from charges that are otherwise supported by probable cause.  *Nieves v. Bartlett,* 587 U.S. 391 (2019).  Because probable cause existed, Plaintiff has failed to state a First or Fourth Amendment violation, and without an underlying

constitutional violation, Cleveland, UH Hospitals and all other Defendants are entitled to judgment on the pleadings of Plaintiff's attempted *Monell* claims.

The City of Cleveland also argues an alternative basis for dismissing Plaintiff's *Monell* claims—Plaintiff has failed to allege a specific policy, training or custom connected to or ratified by the City of Cleveland that caused her damages.  ECF Doc. 30-1.  The Court agrees that Plaintiff's allegations are vague.  Paragraph 81 of Plaintiff's amended complaint states:

> City of Cleveland and Kobak failed to adequately train, to implement corrected training, and/or to supervise the training and implementation of First Amendment speech protections for the UH Police Department and knew or reasonably should have known this deficit would result in the violation of individuals' First Amendment rights by the UH Police Department's officers.

Plaintiff really hasn't identified an improper policy or training which led to the incident on July 3, 2024.  She hasn't even alleged facts showing that the City of Cleveland played a role in training or supervising the UH officers.  Defendant Kobak is the chief of police for University Hospital, not the City of Cleveland.

However, the bigger problem with Plaintiff's claims is that the officers didn't violate any of her constitutional rights.  They acted as reasonable officers when they briefly blocked her exit from the hospital.  Plaintiff has not described any false statements the officers made to the prosecutors to cause her subsequent prosecution.  As already stated, Cleveland's prosecutors could view the body-camera video and see for themselves whether the officers had probable cause.  Plaintiff has failed to sufficiently allege a *Monell* claim against the City of Cleveland and Defendants are entitled to dismissal of this claim.

### D.  Breach of Contract

Finally, Plaintiff alleges University Hospital breached a contract with her when it physically violated, mistreated and detained her on July 3, 2024.  ECF Doc. 20-1 at ¶¶ 92-93.

14

Plaintiff's alleged breach of contract claim is based on the same conduct as her First Amendment retaliation claims.  In her opposition, Plaintiff hasn't identified any contract or actual breach of performance which is not related to her First Amendment retaliation claims.  Under Ohio law, a plaintiff cannot maintain both breach of contract and tort claims based on the same conduct, unless the defendant breached a duty owed separately from those created by the contract. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co*., 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261 (Ohio Ct. App. 1996).  Here, Plaintiff does not allege any separate or independent contract with University Hospital.  She was a patient at UH, and Defendants permitted her to enter the hospital.  Her opposition brief merely restates bare-bones allegations for the breach of contract claim.  Because Ohio law does not recognize a separate breach of contract claim based on the same conduct as her other claims, Defendant UH is entitled to dismissal of this claim.

## VI.     Conclusion

Because the body-camera video shows that Defendants had probable cause to briefly prevent Plaintiff from exiting the hospital and because there was probable cause to charge Plaintiff with obstructing official business and persistent disorderly conduct, all Defendants are entitled to dismissal of Plaintiff's First Amendment retaliation claims, her *Monell* claims, her claim for unlawful seizure and her claim for breach of contract.  Defendants' motions for judgment on the pleadings (ECF Doc. 29 and ECF Doc. 30) are GRANTED, and this case is hereby DISMISSED.

IT IS SO ORDERED.

Dated: August 27, 2025

*s/Dan Aaron Polster*
United States District Judge